Pearl G. LONG, Plaintiff-Appellant,

v.

C. B. SAPP, Jr., et al., etc., Defendants-Appellees.

No. 73-3138.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1974.

Kent Spriggs, Tallahassee, Fla., for plaintiff-appellant.

J. Fraser Himes, Tampa, Fla., for defendants-appellees.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

CLARK, Circuit Judge:

Following her dismissal from the position of certification clerk for the Jackson County, Florida, Commodity Distribution Program, plaintiff Long filed this action against the five county commissioners and the director of the program alleging employment discrimination against herself and blacks as a class. Claiming violations of sections 1981, 1983, and 1985 of Title 42, the Civil Rights Act of 1871, and the Thirteenth and Fourteenth Amendments to the United States Constitution, plaintiff sought injunctive relief from further racial discrimination in employment practices, reinstatement in her original job, back wages for the period during which she had been unemployed, costs and attorneys' fees. After a hearing in which plaintiff offered evidence to demonstrate sex as well as racial discrimination,[1] the court below held that Mrs. Long had failed to support her individual claim on either basis and that she could not pursue the class action because she had not shown herself to be a member of the class she purported to represent. We affirm the denial of her individual claim of racial discrimination, vacate and remand the denial of her claim of sex discrimination, and vacate and remand the dismissal of the class action.

Mrs. Long's employment experience with the Jackson County Board of Commissioners began in June 1968, when the Board was designated a "recipient agency" in the Commodity Distribution Program of the United States Department of Agriculture. In consideration of being supplied with certain commodities the Board agreed to supervise and control the certification of eligible recipients and the transportation, handling, warehousing and distribution of all donated commodities. The program was initially staffed by defendant Hester as supervisor, plaintiff Long and another woman as the two full-time certification clerks, and other part-time staff as needed to handle the commodities. A changeover in September 1971 to a "satellite" operation involving multiple distribution points required the hiring of additional part-time personnel to meet the increased logistical problems. The Program was discontinued in February 1972 to be replaced by a state-run Food Stamp Program.

Mrs. Long's duties entailed the certification of eligible recipients and the recertification of recipients whose status had lapsed. By November of 1968 the task of certification had diminished sufficiently to permit elimination of one of the two full-time clerk positions and replacement by a part-time certification clerk, part-time records clerk. Because Mrs. Long was the more qualified of the two, she was retained and the other clerk, a white woman, was released. The two part-time positions were eventually filed by a Mrs. Register, also a white woman.

By 1971, the workload amounted to an average of less than one certification and two recertifications each day, requiring a total of only ninety minutes. An audit by the United States Department of Agriculture resulted in a recommendation by that agency that the full-time certification clerk position be eliminated and that a new position of "warehouseman" be created to increase inventory supervision. The new position was expected to take on added importance when the satellite program began operation. Upon being advised that her employment was to be terminated, Mrs. Long requested consideration for the job of warehouseman. Hester advised her that because of the physical labor required she would not be considered for the job. Mrs. Long also claims, but Hester denies, that she asked to be considered for any part-time work that might be available. In any event, there were no immediate job openings; and it is undisputed that plaintiff did not apply for any of the eleven positions that

1. *See* Fed.R.Civ.P. 15(b).

were filled during the remainder of the program.

Mrs. Long discerns racial discrimination in every aspect of her termination and inability to gain reemployment with the defendants. Her argument boils down to a contention that the selection of her for termination rather than Mrs. Register and the refusal to rehire her makes so little sense that the only credible basis for the action must have been racial. In support of her claim, she notes that the asserted reason for elimination of the certification clerk job, the decline in workload, actually occurred two years prior to the decision to terminate, and thus, she suggests, was not the real basis for the decision. Moreover, as the senior, best educated and most experienced employee in the program, she should have been the logical choice to remain. She points to the failure to consider alternatives to her release, such as the creation of two part-time positions to enable both clerks to remain, as further indication that the decision had a racial basis. She also claims racial discrimination in defendants' failure to consider her for the vacancies that occurred after her termination. She bolstered her claims with statistical evidence[*] of the county's employment record, which, she says, make out a prima facie case of a discriminatory practice sufficient to shift the burden of going forward with clear and convincing evidence to disprove discrimination to the defendants. Cooper v. Allen, 467 F. 2d 836 (5th Cir. 1971).

## INDIVIDUAL CLAIMS

### a. Race

In evaluating the evidence on her individual claim the court below first rejected reliance on the statistical history. Acknowledging that in an appropriate case a statistical employee analysis could suffice to establish unlawful employment practices, the court nevertheless found the minimal statistics available here inapplicable to prove Mrs. Long's personal claim of discrimination in termination and failure to rehire. The court went on, however, to state that even if the statistics were held probative, the defendants had carried their burden of showing that her termination was not predicated upon reasons involving race. The court found "no evidence, except for the plaintiff's suspicions, of a conspiracy to discriminate against the plaintiff or of any discrimination whatsoever against plaintiff herself." Similarly, the court found no evidence of racial discrimination in the failure to offer Mrs. Long the warehouseman position. Finally, the court dismissed her claim that failure to offer other clerical work was discriminatory with the observation that it knew of no legal requirement that an employer offer a new job to a terminated employee merely because of her former status.

■ Our review of the record confirms that the district court's determination that the decision to terminate Mrs. Long's position was governed by business rather than racial considerations is well supported by the evidence. The testimony is clear and undisputed that the duties of the certification clerk had dwindled to a point where they no longer justified continuation of the full-time position. At the same time, persistent discrepancies in the inventory counts and the increase in supervisory responsibility expected to accompany the satellite program made the creation of a full-time warehouseman position desirable. Defendants have demonstrated by clear and convincing evidence a substantial economic, non-racial basis for both decisions.

Plaintiff suggests that defendants' rejection of possible alternatives to her dismissal is further indication that the underlying motive was a desire to separate the only black in a decision-making position from the program. The evidence, however, does not support her thesis. A showing that possible alternatives existed does not alone supply the element of racial discrimination to the action taken. The county had no established procedures whereby a junior em-

ployee might be "bumped" or reduced to part-time status to enable the retention of a more senior employee. Indeed, the testimony suggested that the defendants had little control over the allocation of jobs in the program, such decisions having been made by the federal agency. The finding of the district court must be affirmed as not being clearly erroneous.

■ The finding of no discrimination in the failure to offer Mrs. Long other employment is also due to be affirmed. Eleven persons, all of whom were white and two of whom were women, were hired to work for the Commodity Program in the seven months following plaintiff's release. Hester denied that plaintiff ever indicated any interest in other employment. Mrs. Long testified that at the time she was rejected for the warehouseman job she asked if any part-time work was available and received a negative response. She admits having made no subsequent application for work, but instead relies upon Hester's failure to contact her when openings became available. Hester admitted that he never considered plaintiff for any of the positions, stating that he would not have insulted her by offering her such low paying work. He also testified that he had no practice of contacting terminated employees when work later became available.

The employment records confirm that no positions, other than warehouseman, were filled in the month following plaintiff's release; all employees hired thereafter were part-time, and all were hired to do warehouse labor rather than the clerical work from which plaintiff had been terminated. Although it appears that plaintiff was qualified for these jobs, her failure to apply precludes any finding of racial discrimination. Defendants have demonstrated that no reason existed for plaintiff to believe she would be contacted for such menial part-time positions.

### b. Sex

While no evidence was offered in support of the claim of racial discrimination in the refusal to consider Mrs. Long for the warehouseman job, the testimony did suggest that plaintiff may have been the victim of discrimination in the rejection of her application due to her sex. Because the issue is one of subtle difficulty, a summary of the pertinent excerpts from the record is apropos.

In a pre-trial deposition submitted as evidence in the trial court, Hester was questioned about Mrs. Long's qualifications:

Q Okay. Now looking at Mrs. Long's experience and familiarity with the program, how long—how would she stack up as warehouse person?

A In no way could she qualify.

Q What were those reasons?

A Well, the first fact that had, she had no experience in stock control. She just wouldn't, in fact, no woman could qualify for the job that was required to be done with the physical labor that was involved.

Q Um hum. Okay, other reasons?

A Well, I think that's sufficient reason right there.

Q Okay. I just want to make sure we get all your ideas in thinking at that time.

A It is a manual labor job which took more brawn than brains and going down and opening box cars and issuing out groceries out of the box cars to the other sub-consignees, there was no way a woman could fill the position.

At trial Hester continued with his evaluation of Mrs. Long's abilities. After admitting that she could probably satisfy the cerebral aspects of the job, he repeated his doubt that she could do the physical labor:

A * * * I doubt seriously that she could climb to the top of a stack of boxes, cases five or six feet high and throw them around and level them off where you could get a count for it.

Q Did you ever let her try?

A That was not part of her job.

\* \* \* \* \* \*

A I doubt seriously if she could go down and open a box car and crawl up on it and count the boxes that are in there and when they get through, to level if off so it could be shipped on to the next point.

Another worker, Daniels, echoed Hester's opinion when asked on direct examination.

Q Could Mrs. Long have done Mr. Heath's job?

A I would say in paper work, in checking, in inventorying, but not —I couldn't say in labor, physical labor.

Q Is the physical labor the only part of the job she couldn't have done?

A As far as my opinion I would say so.

Cobb, also a warehouse worker, disagreed:

Q Based on the way that your observation or your ability to see what this new bossman was doing, could Mrs. Long have done that job?

A I believe she *could have. I don't* know whether she could have done it or not, but I believe she could as far as that is concerned, now. What he done while I was there, I didn't stay too long myself.

Hodge, another warehouse worker, agreed with Heath and Daniels:

Q Could Mrs. Pearl Long have done the job that Heath was doing?

A Yes, sir, as far as the tallying.

Q Is there any part of the job that she couldn't have done?

A I don't feel like she could have counted those boxes, handled those boxes of food, no.

Noticeably absent from the testimony offered by defendants is any objective evidence of Mrs. Long's physical ability. Her own testimony was that she was capable of and had recently done physical labor beyond the difficulty of that required by the job. On the basis of the above testimony the court concluded that defendants had shown sex to be a "bona fide occuational qualification" [2] for the position of warehouseman.

A valid finding that being a male was a bona fide occupational qualification [bfoq] would serve to justify any suggestion of sex discrimination established by these facts. Effective implementation of the anti-discrimination legislation compels a narrow interpretation of the exception, however. *See* 29 C.F.R. § 1604.1(a) (1973). In Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5th Cir. 1969), we held that the burden of proof is on the defendant to demonstrate the existence of a bfoq exception. That burden could be satisfied only by a showing that there is "reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved." *Id.* at 235; *cf.* Rosenfeld v. Southern Pacific Company, 444 F.2d 1219 (9th Cir. 1971) ("[S]exual characteristics, rather than characteristics that might, to one degree or another, correlate with a particular sex, must be the basis for the application of the BFOQ exception"). In *Weeks,* the court held Southern Bell to have fallen short of the requisite showing in its reliance on class stereotypes rather than hard evidence of the

2. The phrase comes from § 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(e), which states that "[n]otwithstanding any other provision of this title, . . . . it shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of his [sic] . . . sex . . . in those certain instances where . . . sex . . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise . . . . " Although plaintiff has not brought this suit under Title VII, the interests to be protected are the same, and so, presumably, are the defenses available to the county. *See* Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970).

lifting abilities of women relative to the requirements of the job.

█ The court below acknowledged the holding of *Weeks* but held the burden satisfied by the testimony adduced from the co-workers that substantial lifting of weights is involved in the warehouseman position and that such work was "too much for a woman such as plaintiff and physically demanding of a man." We find the evidence insufficient as a matter of law to support the finding that male sex was a bona fide occupational qualification. No evidence has been adduced except that of the co-workers, all men, who, at best, *doubted* that any woman could do the work involved. Although a more objective evaluation might bear them out, their subjective doubts, which may themselves be based upon impermissible stereotypes, are no substitute for the objective evidence demanded by *Weeks*. *See* Rosenfeld v. Southern Pacific Company, *supra*; Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir. 1971); Annot., 12 A.L.R. Fed. 15, 104–31 (1972); Developments in the Law—Employment Discrimination and Title VII, 84 Harv.L.Rev. 1109, 1176–86 (1971).

█ If sex is not a bfoq, an employer must afford every applicant who desires it a reasonable opportunity to demonstrate his or her ability to perform the tasks required of the position sought.[3] Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir. 1969). "The principle of nondiscrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attribued to the group." 29 C.F.R. § 1604.2(a)(1)(ii) (1973).[4] That

Mrs. Long was not afforded such an opportunity is undisputed. It would not, however, be proper for this court to make the initial ruling on this point, for the court below had before it evidence that it did not reach after its ruling that sex had been established as a bfoq. We remand for a determination of whether plaintiff was refused the job of warehouseman solely on the basis of her sex, because of her physical inability to do the work, or for lack of other valid occupational qualifications; and, if the court should find discrimination, determination of the appropriate remedy.

## CLASS ACTION

█ Plaintiff sought to represent in this suit "all black persons who have applied for employment with the defendants or who would have applied for employment had the defendants not practiced racial discrimination in employment and recruiting, and all black persons terminated by the defendants." She supported this action with statistical evidence of the employment history of the county, which according to the 1970 census had a 29% black population. At the time of the suit, the statistics showed, the county had fifty-one employees, only two of whom were black. A survey of former employees revealed only eight black males and one black female, Mrs. Long, among the 113 persons for whom records had been kept. The responsibility for hiring, although ultimately borne by the five commissioners, was exercised in most cases by the supervisor for whom the employee would be working. At the time of plaintiff's termination, the Commodities Distribution Program, for which Hester was the supervisor, and the Prison and Road De-

---

3. *Weeks* admitted the possibility that a case might arise in which an employer could show that dealing with applicants on an individualized basis would be impossible or highly impractical, and thereby justify application of a reasonable general rule. 408 F.2d at 235, n. 5. That is clearly not the situation in the case *sub judice*.

4. Pond v. Braniff Airways, Inc., 500 F.2d 161 (5th Cir. 1974), commented upon the possible evidentiary implications of a failure to utilize an objective determination of physical strength. We go further to decide this precise issue—if a female disputes the assumed superior physical ability of her male counterpart to meet job requirements, objective testing is required.

partment, for which "Captain" Hill was the supervisor, provided the bulk of county jobs. Both Hester and Hill testified that no formal efforts were made to recruit blacks. When a job became vacant, existing employees would be notified and applications would be solicited by "word of mouth". This method of recruiting has been disapproved where it serves to perpetuate an all-white work force. United States v. Georgia Power Company, 474 F.2d 906, 925 (5th Cir. 1973); Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974). Although defendants have since gone to a more formal application system, the continued low percentage of black employees indicates that all vestiges of the past practice have not been eliminated. The employment statistics and testimony offered by plaintiff thus appear to set out a prima facie case of racial discrimination in employment practices. *See* Bolton v. Murray Envelope Corp., 493 F.2d 191 (5th Cir. 1974); Spurlock v. United Airlines, Inc., 475 F.2d 216 (10th Cir. 1972); Bing v. Roadway Express, Inc., 444 F.2d 687 (5th Cir. 1971); Alabama v. United States, 304 F.2d 583 (5th Cir.), aff'd, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962).

The district court delayed ruling on the propriety of the class action until the conclusion of all the evidence. The final decision dismissed the class claim, reasoning that plaintiff could not represent those black persons who had applied for work with Jackson County and been rejected, or those who would have applied but for the discriminatory policy, because plaintiff had in the past held jobs with the county and it did not appear that she would not again be employed by the county if an opportunity arose. The court refused to continue the action on behalf of terminated black employees because it could foresee multiple suits requiring individual attention.

Plaintiff argues that since this disposition follows the reasoning of the original panel decision in Huff v. N. D. Cass Company of Alabama, 468 F.2d 172 (5th Cir. 1972), the pertinent portion of which was subsequently modified by the en banc court, 485 F.2d 710 (5th Cir. 1973), it cannot stand. Plaintiff contends that this second *Huff* decision requires that we reverse and remand. The difficulty of the issues raised by *Huff's* application to the instant case suggests that a more careful explication may be the better procedure.

The *Huff* litigation concerned a civil rights suit by a former employee on behalf of himself and "black persons who are employed or might be employed by the defendant company who have been and continue to be or might be adversely affected by the practices complained of herein." The district court postponed a determination of the propriety of the class action until it could determine whether Huff could fairly and adequately represent the class as required by Fed.R.Civ.P. 23(a)(4). After a pretrial hearing on this matter, the district court concluded that the reasons for Huff's discharge were entirely non-racial. The court further found that, having been validly discharged, Huff could not fairly and adequately represent the class that he sought to represent, and for that reason dismissed the class action.

In *Huff I*, the panel affirmed the judgment of the district court. While acknowledging that "[n]o class action plaintiff has to prove in order to gain access to the courts that he will prevail on his individual complaint," the panel also noted that "[h]e does have to show . . . that he is a member of a class 'of those similarly situated' and that he can adequately represent it." 468 F.2d at 179. Noting that Huff's discharge had been shown not to be racial, the court reasoned that "[t]he action of the District Court in deciding the merits of Huff's individual claim, incidentally to a determination of his standing to pursue the class action as the only named plaintiff, does not erase the fact, shown by an evidentiary hearing, that Huff is not a member of the class he sought to represent, that is, one presently employed or who might thereafter be employed,

and thus subject to the alleged discriminatory conduct of which he attempted to complain on behalf of others *similarly situated." Id.* The finding that Huff had been validly discharged was held not to be clearly erroneous.

After reexamination of the record by the court en banc in *Huff II,* the order dismissing the class action was vacated and the cause remanded. Judge Godbold, writing for the entire court, framed the issue as being whether the class action had properly been dismissed on the basis of a preliminary determination that the named plaintiff desiring to represent the class was not entitled to relief on the merits of his individual claim. The decision made clear that the strength of the individual claim could not be a factor in determining adequacy of representation under Rule 23(a)(4).

■ While the en banc opinion does not discuss the class membership analysis utilized by the panel, it does implicitly decide that consideration of the likelihood of success on the individual claim is no more proper in the determination of membership in the class than it is in determining adequacy of representation under Rule 23(a)(4). Obviously this implicit holding in *Huff II* must not be read as disagreeing with the panel's acknowledgment that membership in the class remains a prerequisite to pursuance of the class action. The words of the Rule permit no relaxation of this requirement.

■ To be a proper representative, a plaintiff must establish his "nexus with the class and its interests and claims which is embraced in the various requirements of 23(a) and (b)." 485 F.2d at 714. As Judge Godbold's opinion notes, some of the same factors that demonstrate a plaintiff's non-membership in the purported class may also spell defeat on his individual claim. However, consideration of these factors in deciding the class membership question does not constitute improper consideration of "the merits" of plaintiff's individual claim. *See* Bradley v. Southern

Pacific Co., Inc., 486 F.2d 516 (5th Cir. 1973); *compare id. with* Martin v. Thompson Tractor Co., 486 F.2d 510 (5th Cir. 1973), *and* Smith v. Delta Air Lines, Inc., 486 F.2d 512 (5th Cir. 1973).

Thus, the error of the district court in the instant case does not find its remedy in either *Huff* decision. The reason for refusing Mrs. Long representative status was not simply that she could not succeed on her own claim, but that she could not show herself to have been in a position to suffer the kind of discrimination she alleged had been suffered by the rest of the proposed class. In the words of *Huff II,* the district court decided that she lacked the "nexus with the class and its interests and claims." We find this conclusion erroneous not on the basis of *Huff* but rather on the basis of the decisional law of this circuit on the proper scope of class actions in employment discrimination cases.

■ The policy of the Fifth Circuit was expressed in Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969). There a discharged black employee sought to bring a Title VII suit on behalf of himself and all other similarly situated blacks. The district court narrowed the class, holding that the plaintiff could represent only other discharged black employees. On appeal, this narrowing of the action was held erroneous, the scope of the suit clearly being "an 'across the board' attack on unequal employment practices alleged to have been committed by the [employer] pursuant to its policy of racial discrimination." 417 F.2d at 1124. The court continued: "In this case it is clear that the appellant is a member of the class, *i. e.,* a discharged Negro employee of the appellee, and his claim of racial discrimination is typical of the claims of the class." *Id.* More recently, in Jack v. American Linen Supply Co., 498 F.2d 122 (5th Cir. 1974), this court held a former black employee to be a proper representative in a Title VII suit of the class of present and potential future black employees of the defendant.

The "across the board" approach has proved an effective means of implementing the congressional purpose embodied in the civil rights acts. *See, e. g.,* Mack v. General Electric Co., 329 F.Supp. 72 (E.D.Pa.1971); Bateman v. Retail Credit Co., 320 F.Supp. 1115 (N.D.Ga.1970); Wilson v. Monsanto Co., 315 F.Supp. 977 (E.D.La.1970).

Like the plaintiff in *Georgia Highway Express,* Mrs. Long directs her claims at racially discriminatory policies that she alleges pervade all aspects of the employment practices of Jackson County. Having shown herself to be a black and a former employee, albeit lawfully discharged, she occupies the position of one she says is suffering from the alleged discrimination. She has demonstrated the necessary nexus with the proposed class for membership therein. As a person aggrieved, she can represent other victims of the same policies, whether or not all have experienced discrimination in the same way. Reed v. Arlington Hotel Co., Inc., 476 F.2d 721 (8th Cir. 1973), cert. denied, 414 U.S. 854, 94 S. Ct. 153, 38 L.Ed.2d 103 (1974). The scope of the claim is broad enough to include former, as well as present and prospective employees. *See* Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968).

The finding of the district court that plaintiff was not a member of the class she wished to represent made unnecessary any determination whether the other requirements of Rule 23 had been satisfied. Our holding that this initial finding was erroneous requires that the ruling be vacated. This claim must now be remanded for further consideration of the class action question along with the individual claim of sex discrimination. The first task of the district court on the class action aspect of the remand must be an evaluation of the class claim under the remaining requirements of Rule 23. *See* Huff v. N. D. Cass Company of Alabama, 485 F.2d 710 (5th Cir. 1973). Determination of plaintiff's fitness to represent the class adequately and fairly under Rule 23(a)(4) should

be made under the standards set out in Johnson v. Georgia Highway Express, *supra.* *See also* Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2d Cir. 1968). Whether the present record will be adequate or further fact development on this issue should be permitted is a question committed to the discretion of the trial court.

Affirmed in part, and in part vacated and remanded.

