**Carolyn M. JORDAN, Individually and on behalf of all persons similarly situated, Plaintiffs,**

v.

**E. L. WRIGHT, Jr., as Director of the Department of Public Safety for the City of Montgomery, et al., Defendants.**

Civ. A. No. 75–19–N.

United States District Court, M. D. Alabama, N. D.

March 12, 1976.

Pamela S. Horowitz, Morris S. Dees, Jr., Joseph J. Levin, Jr., and John L. Carroll, Montgomery, Ala., for plaintiff.

Joseph D. Phelps, Robison, Belser, Brewer & Phelps, Walter J. Knabe, Capell, Howard, Knabe & Cobbs, and Truman M. Hobbs, Hobbs, Copeland, Franco & Screws, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

FRANK M. JOHNSON, Jr., Chief Judge.

This class action on behalf of all women who have been employed, are employed, or are to be employed in the future, or who are applicants for employment with the City of Montgomery Police Department was tried to the Court on January 12, 1976. The submission is upon the pleadings, testimony and exhibits thereto, stipulation of facts and the briefs and arguments. This Court has jurisdiction of this matter pursuant to the provisions of 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

The evidence in this case reflects that the plaintiff Jordan had been employed as a clerk in the Montgomery Police Department since February 28, 1974. In May, 1974, she submitted to defendant Personnel Board her first of three applications for the position of policewoman. Refusing to accept her application, defendant Board placed plaintiff Jordan on a mailing list to be notified when applications would be accepted. Jordan never has been so notified. This Court finds that plaintiff Jordan adequately represents the class of women that she purports to represent in this case who have been or might be employed or are applicants for employment with the City of Montgomery Police Department.

When plaintiff Jordan used the term "policewoman" on her application, no one at the Personnel Board explained to her that there was a difference; in terms of duties, between "policewoman" and "police patrolman" nor did anyone inquire as to plaintiff's preference with respect to duties. Nor did the plaintiff Jordan inquire of anyone who had authority to speak for the Police Department as to the exact scope of the duties involved and of the proper way in which to apply for the job. However, subsequent to the submission of her first application, Jordan communicated her desire to perform general police work, including patrol duties, to certain supervisory personnel within the Montgomery Police Department. She was told that a woman officer could not be assigned to do patrol work.

Samuella Benton, presently an Air Force sergeant stationed at Maxwell Air Force Base, also applied for police work in the Montgomery Police Department. Her first

application was made in December, 1972, and a second application was made in October, 1974. Each time Benton listed the position for which she was applying it was as "policewoman" or "patrol woman." Benton communicated her desire to perform patrol work to certain supervisory personnel in the Montgomery Police Department. However, she was told that the job was too dangerous for women and that in any case Montgomery was not yet ready for women on patrol.

Pat Lawrence presently is employed by the Law Enforcement Planning Agency of the State of Alabama. She first applied for police work in the Montgomery Police Department in December, 1974. The difference in duties between policewoman and police patrolman was not explained to her. Subsequent to filing her application, Lawrence went to see Deputy Chief Strickland who suggested that she apply for a typist job and work up to "policewoman." Lawrence did not communicate her desire to perform patrol work to anyone in the Montgomery Police Department. Jordan, Benton and Lawrence are each high school graduates and over the age of twenty-one; each is at least five feet, two inches tall and weighs 120 pounds; none has been convicted of a felony. The evidence in this case reflects that the defendants did not inquire into the qualifications of any of the above-named plaintiffs to perform police work and that no inquiry was made as to the qualifications of these applicants because of their sex. The defendant Board maintains one classification for "policewoman" and another classification for "police patrolman." An officer who is classified as "policewoman" is not allowed to perform general police work but rather is restricted to performing "such duties as may be assigned by her commanding officer which are best performed by a woman. . . ."[1]

When this action was filed, there were 175 males and no females classified as "police patrolman"; three females and no males were classified as "policewoman." Of the 262 total full-time sworn officers in the Montgomery Police Department, only eleven, or 4.2 percent, were women. The evidence reflects that women comprise approximately 43 percent of Montgomery's labor force.[2] Of the eleven full-time female officers in the Montgomery Police Department, ten were assigned to the Youth Aid Division; the eleventh, who has been with the Department ten years, is assigned to the Complaint Desk. No female officers were, or have they ever been, assigned to the Patrol Division, Traffic Division, Detective Division, Administrative Division or the Bureau of Special Investigation. Of the eleven females, only one was in a supervisory position; she was a corporal, which is the lowest supervisory rank in the Department.

When plaintiff Jordan applied to be a policewoman and at all times subsequent thereto, defendant Personnel Board had an eligibility list of approximately 50 policewomen. As of May 8, 1975, 416 policewoman applicants, all females, were on defendant Board's mailing list. Between the date plaintiff Jordan submitted her initial application on May 2, 1974, and the date this litigation was initiated, January 24, 1975, only two female officers were hired in the Montgomery Police Department. During this same time, 47 male officers were hired.

▇ The evidence in this case is clear that there is no reason from a performance viewpoint for not utilizing women in the Montgomery Police Department on the same basis as men.[3] Furthermore, the evi-

---

1. City of Montgomery Police Department's Manual of Rules and Regulations, Section 136, "General Duties of Policewoman."

2. 1970 U. S. Census. General Social and Economic Characteristics, Alabama, Table 85.

3. See P. Bloch and D. Anderson, *Policewomen on Patrol* (1974); and T. White and P. Bloch, *Police Officer Height and Selected Aspects of Performance* (1975). See also "Women in Policing," *FBI Law Enforcement Bulletin,* September, 1975. Anthony Bouza, Assistant Chief of Police, New York City, concludes: "My feelings, after two years of watching a large number of women in police work, is that they can be used interchangeably with men."

dence is clear and this Court now finds and concludes that the action of the defendants in failing to employ females on the same basis as males was under color of law as that phrase is used in 42 U.S.C. § 1983, and the said actions in failing and refusing to employ females on the same basis as males in the Montgomery Police Department constituted discrimination based on sex. Such conduct is in violation of the Fourteenth Amendment. *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). As stated, the defendants have not seriously attempted to demonstrate that sex is a "bona fide occupational qualification" for the job responsibilities included in the classification of "police patrolman." See *Long v. Sapp,* 502 F.2d 34 (5th Cir. 1974). As a matter of fact, defendants upon the trial of this case introduced no evidence at all that women are unable to perform safely and efficiently the duties of an officer engaged in general police work, including patrol.

■■■ This Court is convinced, however, that defendants had no knowledge that any woman was seriously interested in the job of "police patrolman" prior to the institution of this litigation. The order and injunction to be entered in this case will be designed to remedy, to the extent considered by the Court to be practical, the effects of past discrimination against women in the Montgomery Police Department and to ensure equal treatment of female applicants and employees in the future. However, the Court is convinced that ordering quota employment at this time is not a proper remedy to be accorded plaintiffs in this case. Plaintiffs may renew their request for quota hiring if defendants fail to implement in good faith, and effectively, the recruiting, hiring, assignment and promotion plan to be required by this Court. Moreover, back pay in this particular instance is an inappropriate remedy under Section 1983. Such an award is particularly inappropriate in this case since there has been no showing that the named plaintiff or any member of the class was qualified for the job and that any of them had suffered deleterious economic consequences by reason of not having been employed by the Montgomery Police Department as "police patrolman."

The order to be entered in this case will enjoin defendants from engaging in any act or practice which has the purpose or effect of discriminating against any employee, any applicant, or any potential applicant for employment with the Montgomery Police Department because of that individual's sex. The order will also require the defendants to abolish the classification of "police patrolman" and the classification of "policewoman." In the place of these classifications defendants will establish a single entry-level classification of "police officer" open to all applicants without regard to sex. The qualifications for the position of "police officer" shall be the minimum standards presently found in Title 55, § 373(109), Code of Alabama 1940 (Recompiled 1958) (Cumulative Supplement 1973). Furthermore, defendants will be required to consolidate the existing eligibility list for "police patrolman" and the existing eligibility list for "policewoman" into a single eligibility list for "police officer." Persons shall be placed on the new eligibility list without regard to sex and shall occupy that place on the list to which their score on the Cecil test[4] entitles them. Defendants will continue to maintain a single eligibility list for "police officer." Defendants will be prohibited from implementing any selection criteria or following any investigative procedure for the position of "police officer" other than those herein authorized. Furthermore, defendants will be required to notify by certified mail every woman on the existing policewoman mailing list that she is eligible to take the written examination for police officer. Such a notice shall specify the date, place and time of such examination and shall have appended a copy of the

---

4. Applicants who met the qualifications as herein set out shall be permitted to take the test recommended by Drs. Jean H. and Carl E. Cecil and approved by this Court in *United States v. City of Montgomery,* 350 F.Supp. 451.

new policies and procedures to be implemented under this order. Defendants shall also be required to assign, promote, and compensate all female police officers on an equal basis with male officers. Defendants shall also be required to implement a recruiting program specifically designed to inform women of their opportunity to become police officers within the Montgomery Police Department. Such recruiting efforts shall stress the equal role of men and women in the Montgomery Police Department and shall provide information as to how and where to apply, starting salaries, and fringe benefits. If Carolyn M. Jordan, Samuella Benton and Pat Lawrence, after taking the appropriate examination and after investigation, are determined to be qualified to be hired as police officers with the Montgomery Police Department, they shall be employed in that capacity in the order named.

An appropriate order will be entered accordingly.