**Reuben B. GREENE et al.**

v.

**Harold H. BROWN et al.**

**Civ. No. 75–0487–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

May 8, 1978.

States Army Quartermaster Center and Fort Lee, located near Petersburg, Virginia, alleging that they, and others similarly situated are and have been the victims of race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

This matter is before the Court on plaintiffs' motion to certify this action as a class action pursuant to Fed.R.Civ.P. 23. Rule 23 provides that in order for this action to proceed as a class action the following requirements must be met:

> . . . (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The plaintiffs seek to represent a class including all black persons who have been employed or sought employment in a civilian capacity at Fort Lee, Virginia, since 24 March 1972, who have been or may be denied equal employment opportunities by the defendants because of their race.

Extensive discovery has taken place on the question of class certification, and the parties have submitted briefs and educed evidence at a certification hearing before the Court. The parties agree that the question of class certification is ripe for decision.

It is clear that the class which plaintiffs seek to represent easily meets the requirements of numerosity. The requirement that there be questions of law or fact common to the class is also met. The Court is satisfied that the attorneys retained by the representative parties are capable of adequately prosecuting this lawsuit on behalf of the class.

■ Congress has, however, established an administrative procedure for the resolution of claims of discrimination in employment under Title VII which must be exhausted before a lawsuit may be brought in the district court. The clear purpose of this

Henry L. Marsh, III, Louise A. Lerner, Richmond, Va., for plaintiffs.

Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

This is an action by eleven present and former civilian employees of the United

administrative procedure is to secure the resolution of discrimination disputes at the lowest possible level. In a proper case, the failure of a plaintiff to follow the procedures established by Congress will result in dismissal of his suit by the district court for lack of jurisdiction. *EEOC v. Appalachian Power Co., Inc.*, 568 F.2d 354 (4th Cir. 1978).

The most important of the procedures established by Congress is the filing of a formal complaint or charge [1] with the administrative body charged with investigating and conciliating in cases of alleged discrimination. In the case of a private employer this agency is the EEOC. In the present case, which involves an allegation of discrimination against an agency of the United States, the charges were properly filed with the Equal Employment Opportunity Office of the agency itself. In either case, the charge is the document which triggers the administrative investigation which in turn leads to the efforts by the agency to resolve the dispute out of court.

In the recent case of *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976) the Court said:

> [T]he original charge is sufficient to support . . . a civil suit under the Act for *any discrimination stated in the charge* itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act. [Emphasis in the original] [532 F.2d at 366].

The Fourth Circuit has twice reiterated this principle since *General Electric*. In *King v. Seaboard Coast Line R. Co.*, 538 F.2d 581 (4th Cir. 1976) the plaintiff charged that defendant's failure to give him, a non-drinker, full seniority at the time of his re-employment constituted discrimination because drunks were rehired with full seniority rights. The district court granted summary judgment for the defendant, and the Court of Appeals affirmed, saying:

> [O]ne who seeks relief under that Title [Title VII] must, as a prelude to any right to sue, file a charge "in writing" and "under oath" with the EEOC within ninety days after the act of discrimination of which he complains occurred. That charge, enlarged only by such EEOC investigation as reasonably proceeds therefrom, fixed the scope of the charging party's subsequent right to institute a civil suit. The suit filed may encompass only the "discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge." The discrimination stated by the plaintiff in his charge is not based on race or sex nor reasonably related to or like a race or sex discrimination. Because "drunks" were treated more generously than the plaintiff has no resemblance or likeness to a race or sex discrimination. Plaintiff in his charge did not accordingly state a discrimination within the purview of Title VII nor was there an EEOC investigation that could under any theory have enlarged that charge to embrace racial discrimination. [Footnotes Omitted] [538 F.2d 581 at 583.]

In *Nance v. Union Carbide Corp.*, 540 F.2d 718 (4th Cir. 1976), *vacated on other grounds*, 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977) the Circuit Court rejected the plaintiff's contention that she had been discriminated against in promotion, and then expressed doubt as to whether the issue was properly before the court at all in view of the fact that discrimination in promotion was not raised in plaintiff's charge, citing *King* and *General Electric*.[2]

---

1. The charge of discrimination is denominated a "Formal Complaint" but because of likely confusion of that term with the similar term for the pleading which commences a lawsuit, a "complaint" as mentioned in Fed.R.Civ.P. 3, in this opinion the term "charge" shall be used to designate the formal initiation of administra-

tive relief through the filing of a sworn writing charging discrimination.

2. Plaintiffs suggest that the examination of the scope of the administrative investigation should be limited to a consideration of whether the charge was of race or sex discrimination, or some other form of discrimination not within

In *Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184 (D.Md.1977) the plaintiff filed her charge with the EEOC challenging defendant's policies on wages, benefits, and terms and conditions of employment on account of sex. The EEOC found no reasonable cause to sustain plaintiff's charges of sex discrimination and issued plaintiff a right-to-sue letter. In her complaint filed in the district court, plaintiff sought to expand her challenge to Rubbermaid's employment practices to include many areas not mentioned in her charge or investigated by the EEOC. Defendant moved to dismiss all allegations not raised in the original charge or the EEOC investigation. The court granted the motion, saying:

> The holding of this court is that the scope of this litigation is limited to Rubbermaid's employment practices regarding wages, benefits, and terms and conditions of employment. This is what plaintiff alleged before both the Montgomery County Commission on Human Relations and the EEOC. The EEOC's reasonable investigation of the original charges, as defined by the Commission's letter of determination, was limited to these three specific areas of Rubbermaid's employment practices and delimits the scope of this action. Having found that the additional allegations were neither uncovered during the course of a reasonable investigation of the original charges nor of the same type and character as the original charges, Rubbermaid's motion to dismiss all of plaintiff's allegations except for those concerning wages, benefits, and terms and conditions of employment will be granted. [Footnotes omitted] [436 F.Supp. 1184 at 1193].

the purview of Title VII. However, as plaintiffs point out the Court of Appeals in *Nance* did not so limit its consideration of the scope of the plaintiff's charge. The very recent case of *EEOC v. American National Bank,* 574 F.2d 1173, No. 76–2452 (4th Cir., filed 18 April 1978) (Butzner, J.) also indicates that the Court's inquiry is not so limited. In that case, the EEOC mounted a broad attack on defendant's employment practices based on a charge of racial discrimination in hiring. The Court of Appeals said: "The commission was entitled to bring suit on these broader allegations because they were founded on the reasonable cause

■ Thus, the Court must examine carefully the charge filed by each proposed representative party and the administrative investigation conducted pursuant to each charge to determine the scope of the complainant class he can properly represent.[3]

## I

■ It is clear from the outset that plaintiff Reuben B. Greene is not a proper representative party for a class of persons complaining of racial discrimination. His charge filed 25 October 1974 is not based upon discrimination because of either race, color, religion, sex, or national origin. Mr. Greene, himself an EEO counselor, indicated none of these reasons in the appropriate paragraph of his formal charge, and his charge does not otherwise mention racial discrimination. The only allegation of discrimination in promotion concerned the selection of LTC Brissette for the position of EEO Officer at Fort Lee. This promotion made on 16 November 1973, much more than 30 days before the filing of Greene's charge. But in addition to being untimely, Greene's charge had nothing to do with racial discrimination.

Greene's sworn testimony before this Court shows conclusively that his charge dealt not with racial discrimination against Greene. Greene stated that the applicant selected, LTC Brissette, a black, was selected because he was willing to go along with the discriminatory practices of the Army while Greene was unwilling to do so. This testimony obviates any claim that Greene's

determination and conciliation efforts." At 1175. The Court of Appeals made this observation despite the fact that the original charge was of race discrimination and the charge would not have needed to be broadened if *General Electric* be interpreted under the theory advanced by plaintiff.

3. The fact that the charges in the present case were filed with the Equal Employment Opportunity Officer at Fort Lee rather than with the EEOC is of no moment. The jurisdictional prerequisites are essentially the same in either case. 42 U.S.C. § 2000e–16(c).

race was involved in the least in his failure to obtain the promotion to EEO Officer. The decision was, according to Greene, predicated upon prospective job performance, not on the race of either of the two applicants.

A careful reading of the report of investigation filed on 31 January 1975 fails to reveal any mention or conclusion relating to race in any part of the detailed and exhaustive fifteen-page single-spaced report.[4] Because neither his charge nor the administrative investigation conducted in response to his charge contains any indication of racial discrimination, Greene cannot properly represent persons subjected to racial discrimination on the basis of his charge of 25 October 1975.

## II

Miss Gladoria G. Williams filed a formal charge of discrimination on 30 September 1974. In her charge Miss Williams charged that a number of "circumstances" occurred to her because she was black and female. These circumstances included a failure to list her name on the register for a job opening at Fort Lee, questionable placement procedures in a job placement, and harassment and intimidation for seeking EEO counseling. The investigation of Miss Williams' complaint failed to disclose any additional discrimination and concluded that her charge of race and sex discrimination in promotion was not supported.

The Court has carefully considered Miss Williams' charge, the report of the administrative inquiry which it sparked, and the sworn deposition of Miss Williams taken by defendants on 16 November 1977. Among the questions in the Court's mind upon commencing its consideration of her claim was whether Miss Williams charged racial discrimination in the form of disparate treatment by individuals, named or unnamed, which resulted in her failure to get a promotion; whether Miss Williams charged racial discrimination in the form of the dispa-

rate impact upon blacks of the facially neutral placement policies administered by the Department of the Army and the Civil Service Commission which resulted in her failure to get a promotion, or whether both forms of discrimination were charged by Miss Williams.

It is clear that Miss Williams believed that she was the object of race and sex discrimination by one Leland A. Slaydon, her supervisor at Fort Lee. Mr. Slaydon's name appears in Block 5c of Miss Williams' charge which is entitled "Name and title of person(s) you believe discriminated against you." At her deposition on 16 November 1977, Miss Williams was asked what made her believe that the omission of her name on the promotion register had something to do with the fact that she was a black female. She answered, "I felt that my supervisor, because of my race and sex, was discriminating against me." [Transcript of deposition of Gladoria G. Williams, page 27.]

Nowhere in her charge and deposition does Miss Williams indicate that hers is a broad-based challenge to the hiring practices of the Civil Service Commission or the Department of the Army. The administrative investigator from the Civilian Appellate Review Office who conducted the investigation of Miss Williams' charges did not interpret her charge to include an attack on the government-wide regulations which resulted in two white men being placed in the positions she applied for. The investigator felt that his job was completed when it was shown that "[t]he placements [of the two white males] were proper and correct in view of the requirements imposed by DOD 1400.20–1–M and CPR 950–1." [Plaintiff's Exhibit 23, page 6.] Of course, the scope of the administrative investigation may not be used to limit the scope of the plaintiff's charge. However, the interpretation given the charge by an investigator from the agency charged with administering the Army EEO program is signifi-

---

4. Though the Court read the entire investigative file only the conclusions or findings may properly be looked to to determine whether

discrimination was found as a result of the investigation. *Macon v. Bailar,* 451 F.Supp. 140 (E.D.Va.1978).

cant and entitled to consideration by the Court.

Because her charge challenged only disparate treatment by her supervisor and not the disparate impact of Civil Service and Army personnel regulations, the class which Miss Williams could represent must be limited to those black persons who have been denied equal employment opportunity at Fort Lee because of unequal treatment by individuals at Fort Lee, and not by the disparate impact of facially neutral employment policies. The Court must now proceed to determine whether Miss Williams meets the Rule 23 requirements of a representative party for such a disparate-treatment class.

### A.

Miss Williams is not a proper representative of the class of persons she seeks to represent for two reasons. First, she does not meet the requirement of Rule 23 that the representative party be a member of the class whose claims are raised by the suit.

In *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the Supreme Court held that the Court of Appeals erred in certifying a suit under Title VII as a class action because it was evident by the time the class was certified that the named plaintiffs were not members of the class they purported to represent. The evidence educed at trial showed that the plaintiffs lacked the qualifications to be hired as line drivers, and so they could not have suffered from the discrimination which allegedly afflicted the class. The Supreme Court recognized that once a class is certified the claims of the class need not stand or fall with the claims of the individual representative parties. But where the class has not been certified "the decision whether the named plaintiffs should represent a class is appropriately made on the full record." 431 U.S. at 406, n. 12, 97 S.Ct. at 1898. *Rodriguez* teaches that in making its decision on the question of whether the requirements of Rule 23 are met, the Court must not close its eyes to the

facts that have been established at the time the decision is reached.

In the present case, it is not seriously disputed that Miss Williams was denied the job she sought because government regulations gave the persons responsible for promotion no choice but to promote two persons other than Miss Williams. This was unfortunate from her point of view, but where there is no discretion there can be no treatment-type discrimination as set forth by Miss Williams in her charge. Thus, Miss Williams has not suffered the same injury as a class seeking relief from disparate treatment. With respect to a class seeking relief from disparate impact, Miss Williams made no such charge and the investigation found none.

The Court is mindful of the teaching of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) that a court may not conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. This rule, however, does not affect the decision in *Rodriguez* that the determination of who may represent a class shall be based on facts shown at the time the certification is made.

The Court is also mindful of the Fifth Circuit's recent opinion in *Satterwhite v. City of Greenville, Tex.*, 557 F.2d 414 (5th Cir. 1977) (en banc) which expressed the view that the Supreme Court in *Rodriguez* did not intend to overrule *Huff v. N.D. Cass Co.*, 485 F.2d 710 (5th Cir. 1973) (en banc). In *Huff*, the Fifth Circuit held that "a class plaintiff who otherwise meets the demands of [Rule] 23(a) and (b) should not be found to be disqualified solely by an advance determination that his claim is predictably not a winning claim and that, therefore, he cannot adequately represent the class as mandated by [Rule] 23(a)(4)." 485 F.2d at 714.

The Fifth Circuit bases its view upon the fact that the Supreme Court cited with approval in footnote 12 of *Rodriguez* the case of *Moss v. Lane Co.*, 471 F.2d 853 (4th Cir. 1973), which the Fifth Circuit terms "the Fourth Circuit's analogue to *Huff*."

557 F.2d at 422. In *Moss*, the Fourth Circuit held:

> If the plaintiff were a member of the class *at the commencement of the action* and his competency as a representative of the class *[be] then determined* or assumed, the subsequent dismissal or mootness of his individual claim, particularly in a discrimination case, will not operate as a dismissal or render moot the action of the class, or destroy the plaintiff's right to litigate the issues on behalf of the class. [Emphasis added.] [471 F.2d at 855.]

At an early stage in the district court proceedings in *Moss*, reported at 50 F.R.D. 122 (W.D.Va.1970), the trial court had found that "[t]he four prerequisites to bringing a class action under Rule 23(a) have been met," and the court had also made other dispositions that made it clear that the action could proceed and was proceeding as a class action. 50 F.R.D. at 126. The *en banc* Fifth Circuit apparently is of the view that the district court took similar actions in *Huff*, although no mention of such actions is made in the panel opinion in *Huff* reported at 468 F.2d 172 (5th Cir. 1972).

In the present case no class has been certified, and no findings yet have been made as to the adequacy or class membership of any class representative. Thus, the Supreme Court's ruling in *Rodriguez* that "[w]here no class has been certified . . . and the class claims remain to be tried, the decision whether the named plaintiffs should represent a class is appropriately made on the full record . . ." is fully applicable. 431 U.S. at 406, n. 12, 97 S.Ct. at 1898.

Nor is this court engaging in a mere variation of the error found by the Court of Appeals in *Cox v. Babcock and Wilcox Co.*, 471 F.2d 13 (4th Cir. 1972). There the trial court delayed certification until after trial on the merits of the individual claims. This Court seeks to determine certification "as soon as practicable" and on the basis of the whole record as its exists at the time certification was sought by plaintiffs. Clearly, such a relatively early determination precludes prejudice to defendants and statute of limitations problems for plaintiff class members as was perceived in *Cox, supra,* at p. 16.

Further, it appears that regardless of the intendment of the remand ordered in *Cox*, the remand did not contemplate plaintiff Cox continuing as the class representative. He had been conclusively found not to be a member of the class. It is not clear from *Cox* who, if anyone, was the class representative on remand and it is difficult to conceive of a law suit with neither a named plaintiff nor a certified class. But there must have been indications in briefs or oral argument on appeal that some one or more persons were standing by to represent the plaintiff class.

A further problem with *Cox* is its citation in n. 12 of *Rodriguez*. There does not appear to be any substantial procedural difference between *Cox* and *Rodriguez*. *Cox* must have been cited in *Rodriguez* as an example of what may be done in the exercise of lower court discretion in a *Rodriguez-Cox* situation.

Here the Court has attempted to deal with the certification problem before difficulties accumulate and before prejudice accrues to either party. And the determination is made on the basis of the facts developed by the parties on the record. None of the cited cases can sensibly be read to require the district court to un-know facts it knows and ignore circumstances that clearly exist.

Furthermore, the facts of the present case are markedly different from those in *Huff* while being similar to those found in *Rodriguez*. Indeed, the paradigm case for concluding that a party should not represent a class set out in the hypothetical from the *en banc* opinion in *Huff* would militate against Miss Williams:

> A plaintiff who seeks to represent all employees on a claim of discriminatory denial of promotions might, if the case goes to trial, lose on his individual claim because it turns out that he was never employed by the defendant. Retrospec-

tively one might say he lost "on the merits." Yet there is no doubt that the court could lay bare at a preliminary stage this fact concerning the plaintiff, and, having done so, conclude plaintiff was not a proper representative because he lacked the nexus with the class and its interests and claims which is embraced in the various requirements of 23(a) and (b).

In *Rodriguez*, the plaintiffs did not have the necessary qualifications to be considered for the position of line driver, and so they could not have been victims of racial discrimination in promotion to the position of line driver. In *Rodriguez* this fact was developed at trial, not at a "preliminary stage" as mentioned in *Huff*. But the Court does not believe that a different result would be obtained in *Rodriguez* if these facts had been educed at a preliminary stage and not at trial. The facts which establish that Miss Williams is not a member of the proposed class are straightforward and easily determined. They have to do with established rules and procedures, and not with discretionary decisions. Hers is not an arguable case on the merits but a clear case of administrative preclusion from promotion.[5]

In contrast, the facts of the actual case in *Huff* involved a contested question of fact. Huff alleged that he was not recalled to work because he was black. The defendant claimed and proved at a preliminary hearing that Huff was not recalled to work because of his unacceptable performance and for no other reason. These contradictory claims created a question of fact which did not turn on established procedures or requirements but on the weighing of conflicting testimony. No such problem is presented in the case of Miss Williams.

It is clear that despite the finding of the investigation that there was no disparate treatment and despite the undisputed testimony before the Court that the appointing authority was powerless under the regulations to promote Miss Williams, she could

nevertheless maintain an action in this Court on a complaint seeking relief from discrimination by her supervisor. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). But the fact that she is legally entitled to wage her suit does not satisfy this Court under the facts shown that she is a member of the class.

### B.

Second, even if Miss Williams were a member of the class she seeks to represent, the Court would still be faced with the decision whether Miss Williams would fairly and adequately represent the interests of the class. In this regard, the Court has reviewed the deposition of Miss Williams taken by the defendant on 16 November 1977. The Court is of the opinion that Miss Williams' deposition reveals that she is not capable of representing the interests of the class.

It is apparent from even a cursory reading of the deposition that Miss Williams' answers to questions of counsel are those of a person lacking either in candor or in understanding or lacking in both. Miss Williams suffers from a notable lack of memory of the events and circumstances surrounding the filing of her formal charge. When counsel for defendant attempted to ascertain what arrangements had been made for the financing of this lawsuit, Miss Williams' answers were extremely evasive and she once again professed to be unable to remember any details of the agreement between herself and counsel for plaintiff. Near the end of her deposition she lapsed into a condition of near total non-recall. The interests of this proposed class cannot be fairly and adequately represented by a party who is not willing to be entirely open and candid in discovery.

The Court is aware of the fact that the attorneys retained by Miss Williams to represent her interests and those of

---

**5.** *Cf. East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403–4, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) where the Court credited and gave full significance in the class context to the company regulations which disqualified plaintiffs from operating over-the-road vehicles.

the class are experienced and capable members of the Bar of this Court. Nevertheless, Rule 23 speaks in terms of the adequacy of the representative parties. The Rule is not intended to substitute the lawyer for the client and turn an individual's suit for vindication of his personal rights into a lawyer's suit for vindication of the rights of a class. *See Susman v. Lincoln American Corp.,* 561 F.2d 86 (7th Cir. 1977). The interests of the class require that the *representative party* be a person of sufficient discretion to be reasonably able to make the decisions which necessarily fall to the client in the management of a lawsuit. *Cobb v. Avon Products, Inc.,* 71 F.R.D. 652 (W.D.Pa. 1976), *appeal dismissed* 565 F.2d 151 (3d Cir. 1977); *Tomkin v. Kaysen,* 69 F.R.D. 541 (S.D.N.Y.1976). In the absence of evidence to the contrary, the Court would assume that a prospective representative party possesses such discretion. In the present case, however, her deposition proves the contrary. The Court simply cannot permit Miss Williams to represent the interests of the proposed class.

### III

Both Mr. Greene and Miss Williams claim that they were subjected to harassment and intimidation for exercising their rights under Title VII. Despite the lengthy class discovery there has been no showing of the number of persons who may have been subjected to harassment and intimidation for exercising their rights under Title VII. In the absence of such a showing, the Court cannot conclude that joinder of all members of a class with similar claims is impracticable. Accordingly, this action will not be certified as a class action with respect to any claims of harassment or intimidation.

### IV

The administrative investigation of Miss Williams' charge included a statistical survey of the "environment" at Fort Lee which shows the racial composition of the civilian employees at Fort Lee. Plaintiffs contend that this factual analysis in the report should permit them to maintain a broad-based suit challenging all of Fort Lee's hiring and promotion practices. The Court does not agree with this view.

First, although statistics can show a prima facie case of discrimination in an appropriate case, the statistics included by the investigator in his report are bare recitations, labeled and intended only for background. No inferences of racial discrimination are drawn by the investigator on the basis of these statistics, and there is nothing to indicate that an implication of discrimination was intended. Under these circumstances it is incorrect to state that a pervasive pattern of discrimination was or should have been found in the course of the administrative investigation of Miss Williams' charge. Therefore, the Court may not entertain such a challenge under Miss Williams' Title VII complaint filed herein.

Further, it is not the recitation of facts and circumstances in the body of the report of an investigation that is looked to to determine the nature of the discrimination which comes within the Court's jurisdiction in a given case. The Court's jurisdiction extends, in a given case, (1) to the discrimination set forth in the original charge, plus (2) such discrimination as is found to exist and is set forth as such in the findings or conclusion of the investigation. The charge of discrimination found by the investigation must be so designated and must be "included in the reasonable cause determination" and such charge of discrimination must be the subject of the conciliation procedures. *EEOC v. General Elec. Co.,* 532 F.2d 359, 366 (4th Cir. 1976). Thus, mere discussions of facts, circumstances, interviews, disputes, statistics, communications, or probabilities is not a source of jurisdiction from an investigation. Charges of discrimination found to exist and set forth as such in the conclusion or finding of a report do afford a jurisdictional basis for a Title VII complaint.

### V

The original action was filed by Greene and Williams. At an earlier stage when the

two named plaintiffs' ability to represent the class was questioned by defendants, nine persons sought and were granted leave to come into the action as intervenors.

Defendants admit that the intervenors to this action are proper class representatives. The intervenor with the earliest filed formal charge is Theodora C. Richardson, who filed her charge on 4 November 1975. The parties are agreed that the class in this case should include only those persons who might have filed a timely administrative charge at the time of the earliest charge by an individual named plaintiff. *See Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239 (3d Cir. 1975), *cert. den.* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). This means that only those persons who suffered acts of discrimination on or after 5 October 1975 may be members of the plaintiff class.

Plaintiffs seek to represent not only those black persons who have been discriminated against in promotion at Fort Lee, but also those black persons who have been discriminated against in hiring. Plaintiffs contend that they are proper representatives for such a class, citing *Barnett v. W. T. Grant Co.,* 518 F.2d 543 (4th Cir. 1975). In *Barnett,* the district court did not permit the plaintiff, an employee of the defendant, to represent persons who had not been hired and who had not applied for employment because they were ignorant of certain jobs offered by defendant. The Court of Appeals reversed, saying:

[W]e believe the court construed too narrowly the proper scope of class actions in employment discrimination cases.

.     .     .     .     .

Viewed broadly, Barnett's suit is an "across the board" attack on all discriminatory actions by defendants on the ground of race, and when so viewed it fits comfortably within the requirements of Rule 23(b)(2). [Citations omitted.] We believe such a characterization is more consonant with the broad remedial purposes of Title VII  .   .   .. [518 F.2d at 547–48.]

The Court of Appeals in *Barnett* expressed its approval of the view of the Fifth Circuit found in *Long v. Sapp,* 502 F.2d 34 (5th Cir. 1974). In *Long,* a plaintiff whose individual grievance was an allegedly unlawful discharge, sought to represent a class including persons not hired because of defendant's discriminatory hiring policies. The district court dismissed this portion of the class action on grounds that the representative party was not a member of the class she sought to represent. The Fifth Circuit reversed, saying that the representative party's allegations that she has suffered from the alleged racial discrimination were sufficient to show "the necessary nexus with the proposed class for membership therein." 502 F.2d at 43.

Under the rule in *Barnett* and *Long,* the intervenors in this case would, most likely, be proper representatives of a class of persons aggrieved by the hiring policies of the defendant. But the rule in *Barnett* was seriously weakened by the subsequent holdings in *EEOC v. General Elec. Co.; King v. Seaboard Coast Line R.;* and *Nance v. Union Carbide Corp., supra.* Moreover, the Court is convinced that *East Texas Motor Freight v. Rodriguez, supra,* mandates that *Barnett* no longer controls.

In *Rodriguez,* the Supreme Court said:

.   .   . [E]ach named plaintiff stipulated that he had not been discriminated against with respect to his initial hire. In the light of that stipulation *they were hardly in a position to mount a classwide attack* on the no-transfer rule and seniority system on the ground that these practices perpetuated past discrimination and locked minorities into the less desirable jobs to which they had been discriminatorily assigned. [Emphasis Added] [431 U.S. at 404, 97 S.Ct. at 1897.]

Similarly, each named plaintiff in the present case was actually hired by the Army at Fort Lee, and none complains of discrimination in his initial employment. Accordingly, none of the parties plaintiff may represent a class of persons who were never hired by the Army at Fort Lee at all. This view is in accord with that of Senior Judge Hoffman in *United States v. School*

*Board of Suffolk,* 418 F.Supp. 639 (E.D.Va. 1976), *rev'd on other grounds, sub nom. Walston v. School Board of Suffolk,* 566 F.2d 1201 (4th Cir. 1977). Judge Hoffman held that teachers discharged on the basis of a discriminatory test could not represent a class of persons not hired because of poor performance on the same test because of the Rule 23(a)(3) requirement that " 'the claims or defenses of the representative parties are typical of the claims or defenses of the class'. " 418 F.Supp. at 647. In the present case, it is clear that the claims of persons hired at Fort Lee and then denied promotions by discriminating supervisors are not typical of the claims of a class of persons applying for entry-level positions who have never been subjected to the supervision of anyone at Fort Lee.

VI

██ Reports of the investigations of the EEO charges of only three of the intervenors—Theodora C. Richardson, Patricia E. Morgan, and Shirley W. Dexter—have been filed with the Court. Plaintiffs' Exhibits 26, 27, 28. All three of these investigations deal with charges of racial discrimination practiced by supervisors against employees seeking promotion. In view of the experience of counsel for plaintiffs the Court accepts the three reports which were filed as having been selected by counsel as typical of the charges of all intervenors and of the investigations conducted into those charges. Despite the fact that this case has been pending for two and one-half years and despite extensive class discovery, no charge has been presented to the Court, either original or investigative, dealing with the adverse impact of facially neutral employment practices. The Court, then, has no jurisdiction to entertain an action, class or individual, challenging such practices.

In view of the foregoing discussion, the Court will certify this action as a class action on behalf of all black persons presently or formerly employed in a civilian capacity by the United States Army at Fort Lee, Virginia, who have been denied promotion since 5 October 1975 on account of racially discriminatory treatment practiced by supervisors and other persons responsible for administering the promotion process at Fort Lee.

An appropriate order shall issue.