557 F.2d 414
 15 Fair Empl.Prac.Cas. 904, 14 Empl. Prac.
Dec. P 7773
Minda SATTERWHITE on behalf of herself and others similarly
situated, Plaintiffs-Appellants,
v.
CITY OF GREENVILLE, TEXAS, Defendant-Appellee.
 No. 75-3377.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 12, 1977.
Rehearing Denied Granted Nov. 1, 1977.
 
 Larry R. Daves, Tyler, Tex., for plaintiffs-appellants.
 John A. Martin, Rod Phelan, Dallas, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 ON PETITION FOR REHEARING
 Before GODBOLD, SIMPSON and GEE, Circuit Judges.
 GODBOLD, Circuit Judge.
 
 
 1
 The city of Greenville has petitioned for a rehearing of our determination that, although the named plaintiff's individual sex discrimination claim has failed, she can proceed with her class action on behalf of present and prospective female employees of the city allegedly victimized by (1) a discriminatory hiring policy, (2) sexually segregated job classifications and (3) discriminatory compensation scheme. The city now claims that our decision violates the case or controversy requirement of Article III of the United States Constitution. We did not confront this question in Huff v. N. D. Cass Co., 485 F.2d 710 (CA5, 1973) (en banc), a case relied upon in our prior opinion.[1] To resolve the troublesome question about Article III and its relationship to the issue of certification of a class under Rule 23, we grant the petition and withdraw that part of our prior opinion concerning the class question.[2]
 
 
 2
 Two recent cases from the Supreme Court provide our starting point, Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).[3] These cases have shifted the emphasis from whether the named plaintiff in a class action maintains the requisite "personal stake in the outcome"[4] to whether, after the named plaintiff's claim no longer[5] exists, the class has acquired such a personal stake. Developments in the Law Class Actions, 89 Harv.L.Rev. 1318, 1463-66 (1976).
 
 
 3
 Sosna was a challenge to a durational residency requirement for divorce. The three-judge trial court had certified the class action pursuant to F.R.Civ.P. 23(c)(1). By the time her case reached the Supreme Court, however, the named plaintiff-representative had mooted her case by satisfying the one-year requirement. The Court first noted that certification of the class, by invoking res judicata policies[6] and requiring special court supervision,[7] bestowed a legal status on the class separate from that of Mrs. Sosna. As a result, certification "significantly affect(ed)" the case or controversy question. 419 U.S. at 399, 95 S.Ct. at 557, 42 L.Ed.2d at 540. It was not dispositive, however, because Justice Rehnquist then proceeded to analyze the facts of the case to determine whether a live controversy still remained i. e., between the class and the state of Iowa. Because, as to the class, the constitutional infringement alleged was "capable of repetition, yet evading review", the Court held that the class satisfied the case or controversy requirement even though Mrs. Sosna no longer did. Finally, having held Article III to be no bar to the class action, Justice Rehnquist in effect reevaluated the Rule 23(a)(4) adequacy of representation issue in light of Mrs. Sosna's departure from the case. In doing so, he made clear that this analysis was independent of the Article III issue:
 
 
 4
 This conclusion (that Article III is satisfied) does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.' Rule 23(a). Since it is contemplated that all members of the class will be bound by the ultimate ruling on the merits, Rule 23(c)(3), the district court must assure itself that the named representative will adequately protect the interests of the class. In the present suit, where it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met.
 
 
 5
 419 U.S. at 403, 95 S.Ct. at 559, 42 L.Ed.2d at 542-43 (footnote omitted).[8]
 
 
 6
 Franks continued the emphasis on certification established in Sosna[9] and stressed that "capable of repetition yet evading review" was not an essential element of the Article III analysis of that earlier case. Franks was a Title VII racial discrimination suit in which the particular subclass of truck driver applicants had sought hiring, backpay, and a retroactive award of seniority. The sole named representative of this subclass, however, had been hired, given backpay, and then subsequently properly discharged for cause. As to the sole issue of retroactive seniority that was before the Supreme Court, his claim was moot since he no longer had a job. However, once again the Court found an Article III case or controversy between the defendant and the certified subclass. Restating the Sosna rule, Justice Brennan first noted that the subclass of drivers had been certified. He then gave guidance as to how the courts should answer the second question of whether the class members remaining hold a personal stake in the outcome of the controversy:
 
 
 7
 Given a properly certified class action, Sosna contemplates that mootness turns on whether, in the specific circumstances of the given case at the time it is before this Court, an adversary relationship sufficient to fulfill this function exists. In this case, that adversary relationship obviously obtained as to unnamed class members with respect to the underlying cause of action and also continues to obtain as respects their assertion that the relief they have received in entitlement to consideration for hiring and backpay is inadequate without further award of entitlement to seniority benefits. This becomes crystal clear upon examination of the circumstances and the record of this case.
 
 
 8
 The unnamed members of the class involved are identifiable individuals, individually named in the record. Some have already availed themselves of the hiring relief ordered by the District Court and are presently employed as OTR drivers by Bowman. Tr. of Oral Arg. 23. The conditions of that employment are now and so far as can be foreseen will continue to be partially a function of their status in the seniority system. The rights of other members of the class to employment under the District Court's orders are currently the subject of further litigation in that court. Id., at 15. No questions are raised concerning the continuing desire of any of these class members for the seniority relief presently in issue. No questions are raised concerning the tenacity and competence of their counsel in pursuing that mode of legal relief before this Court. It follows that there is no meaningful sense in which a "live controversy" reflecting the issues before the Court could be found to be absent.
 
 
 9
 424 U.S. at 755-57, 96 S.Ct. at 1260, 47 L.Ed.2d at 456-57 (footnotes omitted).
 
 
 10
 We apply the principles of these two cases to Mrs. Satterwhite's class action.[10] Here, the district court denied certification of the class action. The plaintiff representatives in Sosna and Franks did not face this additional problem. See Franks, 424 U.S. at 755, 96 S.Ct. at 1260, 47 L.Ed.2d at 456 ("Given a properly certified class action, . . ."); East Texas Motor Freight System, Inc., v. Rodriguez, --- U.S. ----, ---- n.12, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977) ("provided the initial certification was proper") (dictum). Thus, it would appear that our first inquiry in facing the case or controversy issue should be whether the district court's refusal to certify was proper, viewed from the time at which that court "(could) reasonably be expected to rule" on the certification question.[11] We have consistently urged the district courts to follow Rule 23(c)(1)'s general instruction to determine this question "(a)s soon as practicable after the commencement of (the) action". See, e. g., Huff, 485 F.2d at 712. Accordingly, we would focus upon some time prior to Mrs. Satterwhite's loss on her individual claim.
 
 
 11
 In fact, the district court did just this. On February 4, 1975, some seven weeks before trial began, the court denied plaintiff's motion for class action, after both parties had submitted memoranda of law on the question.[12] However, lacking further evidence, we cannot answer the question whether on February 4 the district court abused its discretion[13] in denying certification. There is nothing in the record in this case to guide us in our Rule 23 (and, therefore, Article III) inquiry, because the district court's pretrial ruling prevented the scope of the trial from extending beyond Mrs. Satterwhite's individual claim over the airport manager position.[14]
 
 
 12
 This interlocutory order, which effectively eliminated the class aspects of the litigation, was preceded by no factfinding as to the requisites of Rule 23. As we have noted before:
 
 
 13
 Maintainability may be determined on the basis of pleadings, . . . but "(t) he determination usually should be predicated on more information than the complaint itself affords." 7A Federal Practice & Procedure (Wright & Miller ed.) § 1785, p. 131. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable. . . . (W)e reject . . . the argument that the judge is inextricably bound by the face of the pleadings.
 
 
 14
 Huff, 485 F.2d at 713 (footnotes omitted). The peculiar, administrative nature of class suits requires that the trial judge assume unique supervisory responsibilities. Independent of the efforts of the parties, he must satisfy himself of the class nature of the suit, at least when the parties have placed the question in issue.[15]
 
 
 15
 This is especially true, as we have suggested many times, given the public nature of Title VII actions. These actions are sometimes said to be "perforce" class actions, since by their very nature they challenge the defendant's actions towards a specific group. Jenkins v. United Gas Corp., 400 F.2d 28, 33 (CA5, 1968); Comment, supra note 5, at 601. Of course, the mere fact that Title VII is involved does not relieve the plaintiff of his burden of proof as to the technical requirements of Rule 23(a), most notably the numerosity and adequacy factors. Rodriguez v. East Texas Motor Freight, 505 F.2d 40, 50 (CA5, 1974), vacated on other grounds,--- U.S. ----, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). No doubt there is tension between the inherently class-based nature of racial and sexual discrimination claims and the procedural need for devices to bring such claims into a focus sharp enough to be manageable by the court as well as fair to the defendant and to those who may subsequently be bound by the litigation. The Supreme Court's recent opinion in Rodriguez recognizes this tension in a racial discrimination context:
 
 
 16
 We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable. The mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination.
 
 
 17
 --- U.S. at ----, 97 S.Ct. at 1898. All we are saying is that the court should be hesitant in such cases to conclude that Rule 23 has not been satisfied without resort to a factfinding process.
 
 
 18
 As an example, in Jones v. Diamond, 519 F.2d 1090 (CA5, 1975), the district court had denied the motion for class action on the basis that the pleadings did not reveal enough to satisfy the Rule 23 requirements. The plaintiffs had done little if anything by way of formal introduction of evidence "to flesh out the Rule 23 skeleton." However, as here, they were given no opportunity to do so. Id. at 1099 n.14. Citing the trial court's "substantial management responsibility" in Title VII class actions, this court held that the trial court had abused its discretion in failing to hold an evidentiary hearing on its own initiative. Only in allowing a hearing, in the circumstances of that case, could the plaintiffs' "burden of proof" as to Rule 23(a) have had any real meaning. See also McArthur v. Southern Airways, Inc.,556 F.2d 298, 302 (CA5, 1977).
 
 
 19
 Perhaps we have less flesh on the skeleton here. In Jones, this court alluded to a set of interrogatories never introduced as evidence that could have helped in answering the Rule 23 question. Here, pretrial discovery has resulted only in a computer printout listing city employees by position and indicating their sexes. But we think that Mrs. Satterwhite presented a genuine claim to having satisfied Rule 23(a)'s requirements, given the existence of this printout and the genuine dispute found in the pretrial briefs over the Rule 23(a) criteria. In view of the trial court's supervisory responsibilities under Rule 23 as well as the almost presumptively class based nature of Title VII suits, we hold that some evidentiary exploration of the issues was required prior to the court's February 4, 1975, ruling.
 
 
 20
 We think our above analysis of the Rule 23(a) certification inquiry that Sosna and Franks require in asking the larger case or controversy question is not affected by the Supreme Court's recent Rodriguez opinion. Rodriguez, a unanimous decision, held it error for a panel of this court to have certified a particular class of drivers because, among other reasons,[16] the district court had already found against the named plaintiffs by virtue of their being unqualified. Thus, on the state of the record, the Supreme Court said, the named plaintiffs had suffered no injury as a result of the alleged discriminatory practices, and were therefore "not members of the class of discriminatees they purported to represent." But the dispositive factor in Rodriguez was that the issue of certification had been left until the end of the named plaintiffs' two-day trial. As in Sosna and Franks, the existence or nonexistence of prior certification became the touchstone:
 
 
 21
 Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives. In such a case, the class claims would have already been tried, and, provided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims. See, e. g., Franks v. Bowman, supra, (424 U.S. 747), at 752-757, (96 S.Ct. 1251, 1258-1261); Moss v. Lane Co., 471 F.2d 853, 855-856 (CA4). Where no class has been certified, however, and the class claims remain to be tried, the decision whether the named plaintiffs should represent a class is appropriately made on the full record, including the facts developed at the trial of the plaintiffs' individual claims. At that point, as the Court of Appeals recognized in this case, "there (are) involved none of the imponderables that make the (class action) decision so difficult early in litigation." 505 F.2d, at 51. See also Cox v. Babcock & Wilcox Co., 471 F.2d 13, 15-16 (CA4).
 
 
 22
 --- U.S. at ---- n.12, 97 S.Ct. at 1898. Putting Sosna and Franks together with this dictum, we think we have such a "different case" here. From the beginning, Mrs. Satterwhite has consistently sought to represent a class of female employees and applicants allegedly discriminated against by the city of Greenville. See note 15 supra. The question we are asking at this point is whether, on February 4, the district judge was correct in not certifying the action. For if certification would have been proper, the Rodriguez inquiry into class membership would be inapplicable for us here. All Mrs. Satterwhite would have to do, for Rule 23(a) purposes, would be to demonstrate now that "decertification (would) not (now be) appropriate." --- U.S. at ---- n.12, 97 S.Ct. at 1898; Sosna, 419 U.S. at 403, 95 S.Ct. at 559, 42 L.Ed.2d at 542-43.
 
 
 23
 This emphasis upon certification which we discern from the Rodriguez dictum has support in the Sosna-Franks line of cases, as we have observed. And absent such a distinction, cases like Huff v. N. D. Cass Co., 485 F.2d 710 (CA5, 1973) (en banc), would have to give way to the following language in Rodriguez:
 
 
 24
 In short, the trial court proceedings made clear that Rodriguez, Perez, and Herrera were not members of the class of discriminatees they purported to represent. As this Court has repeatedly held, a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members. . . . The District Court found upon abundant evidence that these plaintiffs lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury. Furthermore, each named plaintiff stipulated that he had not been discriminated against with respect to his initial hire. In the light of that stipulation they were hardly in a position to mount a classwide attack on the no-transfer rule and seniority system on the ground that these practices perpetuated past discrimination and locked minorities into the less desirable jobs to which they had been discriminatorily assigned.
 
 
 25
 --- U.S. at ---- - ----, 97 S.Ct. at 1896-1897 (citations omitted). We think, however, that the Court did not intend to overrule Huff and like cases. Any such intention would be inconsistent with the Court's approving citation of Moss v. Lane Co., 471 F.2d 853 (CA4, 1973), the Fourth Circuit's analogue to Huff.[17] Thus, we conclude that Rodriguez' reliance upon the named plaintiffs' loss on the merits does not apply to a situation where an appropriate certification decision would have[18] preceded the individual plaintiff's loss on the merits.
 
 
 26
 The court's post hoc answer to this maintainability issue on remand will determine whether, at the time Mrs. Satterwhite lost on her individual claim, there existed a legal entity apart from her which possibly could have maintained a personal stake in the controversy. Even assuming maintainability, however, Sosna and Franks require further that, in the circumstances of this case, the class does in fact have such a stake as to maintain a live controversy.
 
 
 27
 On the present state of the record, we are tempted to say that the class members do not. Much of our preceding discussion regarding the Rule 23(a) question is applicable here. We confront a threshold problem of having no "identifiable individuals, individually named in the record",[19] at which to look. Plaintiff's Exhibit 1 reveals the names of the present female employees.[20] All this computer printout shows to us is simply that there are some employees who, by virtue of their given names, appear to be females and who have certain kinds of jobs and wage rates. There is no showing that any of these persons nurse a grievance against the city. They certainly have not "already availed themselves of . . . hiring relief", as had the class members in Franks. In sum, we cannot point to anyone (other than perhaps Mrs. Tillitson, see note 14 supra ) in the class with a personal stake in the outcome of this Title VII challenge. Nor has Mrs. Satterwhite done so in her response to the petition for rehearing.
 
 
 28
 Must we therefore dismiss this case for lack of a case or controversy? Or should Mrs. Satterwhite be permitted to develop the existence of interested class members on remand to the district court? Mrs. Satterwhite urges us to decide this question on the present state of the record, a not very favorable position for her in view of our preceding development of the law of Article III. But we think that dismissal would be unfairly formalistic here. Since the district court dismissed the class aspects of the suit at the outset, plaintiff had no real opportunity to develop jurisdictional facts necessary to sustain the class nature of the action.[21]
 
 
 29
 As Justice Rehnquist noted in Sosna, there also remains a final question of whether, even though the class members might proceed without offending the requirements of Article III, those class members can still be adequately represented by this particular individual. See also Rodriguez, --- U.S. at ---- n.12, 97 S.Ct. 1891. We adhere to the view expressed in our prior opinion that under Huff Mrs. Satterwhite's mere failure to succeed on her individual claim cannot in and of itself negate the adequacy requirement. See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748-49 (1974).[22] This does not end the inquiry, however. Our prior opinion prematurely decided the difficult question of adequate representation without benefit of any factual development of the class nature of the suit. We leave to the district court, informed by the facts developed on remand, this question whether Mrs. Satterwhite should be permitted to pursue the claims of the putative class.[23]
 
 
 30
 In conclusion, faced with an Article III challenge by the city to jurisdiction in this case, we withdraw that portion of our prior opinion concerning the class question and remand this issue for factual determinations by the district court, after evidentiary hearing. These determinations should include, but are not necessarily limited to, answers to the following questions:
 
 
 31
 (1) As of February 4, 1975, did Mrs. Satterwhite satisfy the four requirements of Rule 23(a)?
 
 
 32
 (2) If so, upon her dismissal from the case, did the class members retain sufficient interest in the outcome of this litigation to serve as Article III plaintiffs?
 
 
 33
 (3) If they did, can Mrs. Satterwhite justify her representation of their interests?
 
 
 34
 The petition for rehearing is GRANTED and the prior opinion, 549 F.2d 347 (CA5, 1977), is withdrawn. The case is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings not inconsistent with this opinion.
 
 GEE, Circuit Judge (dissenting):
 
 35
 Prompted to further thought about Mrs. Satterwhite's potential status as class representative by the petition for rehearing, by the Supreme Court's intervening decision in East Texas Motor Freight System, Inc. v. Rodriguez, --- U.S. ----, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), and in no small measure by the majority's fine and thorough opinion on rehearing, I find myself no longer able to put aside some doubts which had arisen in my mind before my concurrence in the original panel opinion. I recognize as I must, being bound by Huff v. N. D. Cass Co., 485 F.2d 710 (5th Cir. 1973) (en banc) that the patent conflict of interest which logically seemed to foredoom Mrs. Satterwhite's individual claim of sex discrimination did not legally, at the pretrial stage when the district court denied certification, preclude her serving as class representative. But federal courts must always remain aware that Article III of the Constitution precludes our taking and retaining purported jurisdiction over anything less than a case or controversy brought by a person having standing to pursue it, and at this stage we have before us more information in the form of the district court's adverse determination, affirmed by this court, of her claim of individual discrimination than did the district court at the pretrial stage in declining to certify the class with her as representative. Having come to believe that the remand ordered by the majority, a remand on which Mrs. Satterwhite is to be permitted to reargue the existence of a class and the propriety of her representation of it after she has been shown to have no personal interest in the relief sought by the class, countenances a contravention of Article III, I must respectfully dissent.
 
 
 36
 Huff and its progeny within this circuit hold that the existence of a defense which appears likely to defeat a named plaintiff's individual claim is not alone sufficient to support a ruling that he is not a proper class representative. But as the majority notes, ante at 1, the en banc court which decided Huff was not confronted with and did not consider the Article III implications of the remedy, which the majority grants today, of requiring further consideration of the named plaintiff as a class representative after a conclusive adjudication that he has not suffered the injury alleged to be common to the class and thus may not receive the relief sought on behalf of the class. There doubtless is utility in precluding an advance determination that the likelihood of failure of an individual's own claims disqualifies him as the individual plaintiff for a class. But this utility vanishes when the plaintiff's nonmembership in the class has become the law of the case through the trial court's adjudication, affirmed on appeal, that the would-be class plaintiff has not suffered the injury asserted for the class. At this point, we are no longer dealing with a plaintiff who may lose, or who probably will lose, but with one who has lost : who by virtue of our own words is divorced from the case and no longer holds a personal interest in the outcome of the trial of the class action. At this point I see no particular reason to cling so tenaciously to Mrs. Satterwhite as a potential class representative.
 
 
 37
 And especially is this so in view of the constitutional standing question. Since she no longer has any personal interest and thus no standing in her own behalf, it seems to me that the case must be dismissed unless we have before us some other party who does possess the requisite personal stake in a continuing live controversy. But the only other potential party mentioned in the record is the asserted class, and I therefore consider its status as a plaintiff after Mrs. Satterwhite is gone. With the majority, I find in Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and in Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), a heavy emphasis on certification of the class as the initial event in determining standing questions in class suits, but in my view that emphasis weighs against the majority's demand. In Sosna and Franks, the Court recognized that the class when certified is for some purposes treated as a separate plaintiff with grievances all its own, apart from the claims of its individual representatives. After certification, then, if the claims of all individual plaintiffs prove meritless or become moot, the class may itself possess such a "personal stake in the outcome of the controversy", Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), as to warrant continued invocation of federal jurisdiction in its own behalf. But and this is the crux of my disagreement here the situation is altogether different; since certification represents the birthdate of the class as a jurisprudential entity, the district court's denial of certification, whether correct or not, means that no class is present to carry the case after we determine that Mrs. Satterwhite's individual claims are meritless.
 
 
 38
 Thus, we now have before us no one who has a continuing stake in the controversy, only a potential lawsuit searching for a sponsor. I do not believe that Article III permits a remand on which the district court is to retain jurisdiction, even for the limited period of time during which Mrs. Satterwhite is to bring forward motions and argument in support of her representation of the asserted class, over a headless lawsuit with, in effect, no plaintiff. Such procedures smack too much of principle and policy, too little of concrete controversy, too much of legislation, and too little of adjudication for me to feel comfortable with them. I think the proper disposition would be simply to affirm as to Mrs. Satterwhite's personal claims while expressing our disagreement with the district court's undue emphasis on probability of individual success, thus providing some guidance for a proper exploration of the representation question when and if someone else re-institutes the litigation.[1] We now fortuitously know that Mrs. Satterwhite is neither personally aggrieved nor a member of an injured class, and allowing her an attempt to rally a class around her unfortunately fails to assure "that concrete adverseness which sharpens the presentation of issues", id., which a more careful attention to standing would assure.
 
 
 39
 The Supreme Court seems to me to have set its face against the retention of purported jurisdiction on remand here by a post-Sosna decision in a related context. In Board of School Commissioners v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), the Court found that the individual claims of six plaintiffs challenging school regulations were mooted before oral argument upon the graduation of all of the named plaintiffs. Although the suit contained class allegations and the record indicated that the district court may have been favorably disposed toward granting representative status to the named plaintiffs, the class action was never properly certified because of the district court's failure to enter an order showing compliance with Rule 23. "Because the class action was never properly certified nor the class properly identified by the District Court . . .," 420 U.S. at 130, 95 S.Ct. at 850, the entire case was rendered moot by the events which mooted the individual claims.[2] No less in Jacobs than in the case sub judice could a remand have afforded class members a chance to correct district court action which may have cost them the right to proceed as a class when the initial certification decision (or lack of same) was presented. Nevertheless, traditional notions of limited federal court jurisdiction prevailed, as I suggest they should here, where we contemplate a plaintiff who has not lost a claim due to mootness but rather never had one.
 
 
 40
 I can perceive no practical difference between the disposition which I suggest and the remand ordered by the majority, save perhaps the desirable end of removing from the pleadings the name of one who has no stake in the outcome of the suit she retains possession and control over under the remand. The threshold question to be decided when the class claims again come before the district court will be whether a class exists at all. But the same legwork which will produce evidence of the existence of a class of women discriminatees will also produce the names of members of that class, at least some of whom will be proper representatives if such potential representatives are not already waiting in the wings. If there is indeed a live controversy with aggrieved individuals sufficiently numerous to make up a class, surely one of those proper representatives will be willing to come forward to serve as a plaintiff, and if no one is so willing, I see no reason to be contemplating class relief. Although my suggested disposition would preclude reconsideration under the correct standards of the question of Mrs. Satterwhite's eligibility to represent the class, proper language in our opinion would furnish sufficient guidance for the district court to consider correctly the class-representation question, free of undue emphasis on probability of individual success, when someone else steps forward. As I have attempted to show, until that someone else does come forth, any concern about the apparent misapprehension of our law by the district court in its treatment of the class questions is, I believe, misplaced.
 
 
 41
 In sum, Mrs. Satterwhite should no longer be a part of this case under the constitutional standards which we must apply, and the majority's opinion allowing her to continue with class proceedings seems to me a concession to the notion that a class suit belongs to no one so much as to the plaintiff's lawyer. Desiring to make no such concession, I dissent.
 
 
 
 [1]
 The Huff opinion did make one reference to taking a broad approach to "standing" in Title VII cases, stressing the public nature of the rights enforced by private citizens. 485 F.2d at 714 & n.12. But Huff did not address the constitutional problems of standing or mootness
 
 
 [2]
 We adhere to that portion of our opinion, unchallenged here, affirming the dismissal of Mrs. Satterwhite's individual claim of discrimination regarding the airport manager position
 
 
 [3]
 Dictum in the recent case of East Texas Motor Freight System, Inc. v. Rodriguez, --- U.S. ----, ---- n.12, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), reaffirms the approach taken by Sosna and Franks
 
 
 [4]
 Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962)
 
 
 [5]
 Cf. cases where the plaintiff never had individual standing even at the outset of the litigation. O'Shea v. Littleton, 414 U.S. 488, 494-95, 94 S.Ct. 669, 675, 38 L.Ed.2d 674, 682-83 (1974); Bailey v. Patterson, 369 U.S. 31, 32-33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512, 514 (1962) (per curiam). Compare Comment, Continuation and Representation of Class Actions Following Dismissal of the Class Representative, 1974 Duke L.J. 573, 578-79, 583-84, with Developments in the Law Class Actions, 89 Harv.L.Rev. 1318, 1466-70 (1976), and East Texas Motor Freight System, Inc. v. Rodriguez, --- U.S. ----, ---- - ----, 97 S.Ct. 1891, 1896-98, 52 L.Ed.2d 453, 462-63 (1977)
 
 
 [6]
 After certification, a judgment on the merits will bind all those who have been found to be class members at the time of certification. F.R.Civ.P. 23(c) (3); 419 U.S. at 399 n.8, 95 S.Ct. at 557 n.8, 42 L.Ed.2d at 540 n.8
 
 
 [7]
 Once the action is certified, settlement or dismissal requires the court's approval. F.R.Civ.P. 23(e); 419 U.S. at 399 n.8, 95 S.Ct. at 557 at n.8, 42 L.Ed.2d at 540 n.8
 
 
 [8]
 One student author had earlier urged a similar bifurcation of justiciability and representation questions. See the comment cited in note 5 supra, at 597-98, 602-08
 
 
 [9]
 See also Board of School Comm'rs v. Jacobs, 420 U.S. 128, 129, 95 S.Ct. 848, 849, 43 L.Ed.2d 74, 78, (1975), a post-Sosna case. Justice Brennan later indicated in Franks that the Court in Jacobs had also viewed certification as a prerequisite to the existence of a case or controversy involving the class. "As the action (in Jacobs ) had not been properly certified as a class action by the District Court, we held it moot." Franks, 424 U.S. at 754 n.6, 96 S.Ct. at 1259, 47 L.Ed.2d at 455 n.6. The recent Rodriguez decision also suggests that certification is the appropriate starting point in cases such as ours. --- U.S. at ---- n.12, 97 S.Ct. 1891 (dictum). See discussion infra
 
 
 [10]
 We think it irrelevant to our Article III analysis whether mootness vis-a-vis the named representative is "fact-created," as in Sosna, or created by application of law, as in Franks and Satterwhite. The Court did not distinguish between these sorts of situations in dealing with the general problem of class actions whose representatives have for one reason or another lost or abandoned their individual claims. See Rodriguez, --- U.S. at ---- n.12, 97 S.Ct. at 1898, referring to "subsequent events or the proof at trial". See also Thurston v. Dekle, 531 F.2d 1264, 1270-71 & n.10 (CA5, 1976)
 However, the reason why a named plaintiff's claim has been eliminated may concurrently, though not necessarily, have an impact on the adequacy of his further representation of the class under Rule 23(a)(4). See Huff, 485 F.2d at 714: "It is inescapable that in some cases there will be overlap between the demands of 23(a) and (b) and the question of whether plaintiff can succeed on the merits." Accord, Long v. Sapp, 502 F.2d 34, 42 (CA5, 1974).
 
 
 [11]
 "There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. . . ."
 Sosna, 419 U.S. at 402 n.11, 95 S.Ct. at 559, 42 L.Ed.2d at 542 n.11.
 
 
 [12]
 Plaintiff gave notice of appeal from this order but subsequently changed her mind, perhaps in recognition of its interlocutory nature. See, e. g., Jones v. Diamond, 519 F.2d 1090, 1095-96 (CA5, 1975)
 
 
 [13]
 See Carey v. Greyhound Bus Co., 500 F.2d 1372, 1380 (CA5, 1974)
 
 
 [14]
 In seeking to prove her individual claim of sexual discrimination, Mrs. Satterwhite introduced some evidence of the city's hiring and promotion policies in other departments. But it is clear that her attorney did so only to prove a pattern or practice in aid of her individual claim, and not to prove any of the requirements of Rule 23:
 MR. DAVES: " . . . (A)s I know the Court's aware, the Court did dismiss the class action aspects of the suit but employment discrimination is by name class discrimination and I'm entitled to put on evidence of other sexual discrimination by the City of Greenville.
 THE COURT: I will overrule the objection.
 Q Okay, Mrs. Tillitson, have you ever had occasion to apply for any position with the City of Greenville?
 
 
 [15]
 We have held that a motion by one of the parties is unnecessary to bring these duties of the trial judge under Rule 23(c)(1) into play. See United States v. United States Steel Corp., 520 F.2d 1043, 1052 (CA5, 1975), cert. denied, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); Rodriguez v. East Texas Motor Freight, 505 F.2d 40, 50 (CA5, 1974):
 "A class action may not be dismissed because the class representatives fail to ask for a ruling on the propriety of the class nature of the suit. That responsibility falls to the court. 'The court has an independent obligation to decide whether an action brought on a class basis is to be maintained even if neither of the parties moves for a ruling under subsection (c)(1).' Wright & Miller, Federal Practice and Procedure, Civil § 1785 (1972).
 In vacating Rodriguez, the Supreme Court expressly refused to reject this rule, although the Court's opinion casts some doubt on its continued validity:
 "Even assuming, as a number of courts have held, that a district judge has an obligation on his own motion to determine whether an action shall proceed as a class action, . . . the named plaintiffs' failure to protect the interests of class members by moving for certification surely bears strongly on the adequacy of the representation that those class members might expect to receive."
 --- U.S. at ----, 97 S.Ct. at 1897 (citations omitted). In Rodriguez, however, the Supreme Court found contrary to the panel of this court that the plaintiffs never seriously put the class question in issue. That is not true here, where the plaintiff clearly invoked Rule 23 in her complaint and made a formal motion for a class action as early as December 26, 1974, with a supporting brief. Accordingly, all we need say is that the trial court's supervisory responsibilities once certification is at issue include a duty to hold an evidentiary hearing on the matter when a genuine dispute exists about the question.
 
 
 [16]
 The Court also pointed to the plaintiffs' failure to ask for certification and their disagreement with the union majority concerning the desirability of relief as strong indications of inadequacy under Rule 23(a) (4). --- U.S. at ----, 97 S.Ct. 1891. But the opinion's insistence on membership in the class makes these last two flaws in the plaintiffs' case unnecessary to the result
 
 
 [17]
 Moss, like Huff, held that it was improper for the district court, after it had denied a motion to dismiss the class action on the basis that the plaintiff had met the four criteria of Rule 23(a), to have reversed itself later "simply because it concluded that the mere fact that on the trial of the merits the plaintiff had not sustained his claim denied him the right to represent the class". 471 F.2d at 855-56
 
 
 [18]
 One might still ask whether or not our retrospective determination of a potential certification in this case dating back to several weeks before trial is consistent with Rodriguez. The Court there at least impliedly sanctioned a decision denying certification made no earlier than the conclusion of the two-day trial on the named plaintiffs' claims. But the circumstances before us are different. Here, there was a December 26, 1974, motion by Mrs. Satterwhite for certification, and a February 4, 1975, pretrial denial by the trial court. Justice Rehnquist's instructions in Sosna are to view the question no later than when the trial court could reasonably have been expected to rule on it. These instructions, which we believe to have been inspired by the mandate of Rule 23(c)(1), dictate to us the conclusion that the district court should indeed have issued a response as early as February 4. The district court obviously agreed. Whether Rodriguez ' implied refusal to require a similar pretrial ruling arose from the plaintiffs' failure to ask for one, see note 15 supra, or from a view that the circumstances there did not make it "practicable" to do so, Rule 23(c)(1), is a question we need not answer. Neither of these problems exists here
 
 
 [19]
 Franks, 424 U.S. at 756, 96 S.Ct. at 1260, 47 L.Ed.2d at 457
 
 
 [20]
 This list of course identifies no job applicants
 
 
 [21]
 She probably had an incentive to do so, in view of her intention, previously revealed, ultimately to appeal the refusal to certify. See note 12 supra. We do not fault her, however, for acquiescing in the district court's view of the case at trial
 
 
 [22]
 As noted above, we think Rodriguez does not overrule Huff
 
 
 [23]
 Remand is consistent with our past practice in cases where district courts have given improper consideration to the merits of the named plaintiff's claim. See, e. g., Huff, supra; Long v. Sapp, 502 F.2d 34, 43 (CA5, 1974); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124-25 (CA5, 1969). Cf. Rodriguez, --- U.S. at ----, 97 S.Ct. at 1896 (". . . (W)e do not reach the question whether a Court of Appeals should ever certify a class in the first instance.")
 Regarding the standard for the district court's inquiry on remand, we have perhaps been less than clear in the past. In Huff we required the sort of "nexus" that "is embraced in the various requirements of 23(a) and (b)." 485 F.2d at 714. In a sense, this is redundant, since no class action can proceed without satisfying these requirements. In Long this court held (1) that plaintiff had "demonstrated the necessary nexus with the proposed class for membership therein" and yet (2) that the case should be remanded for a Rule 23(a)(4) adequacy determination, under the standard of Johnson (competent attorney plus lack of antagonistic interest). Long thus suggests that there are two requirements before the court can allow the named plaintiff to represent the class. The nexus requirement answers the question, in this particular context, whether the plaintiff is still a member of the class. Nexus would thus turn on such considerations as the plaintiff's personal associations with the situation, and its influence upon him, and his ties with the class. Comment, supra note 5, at 608. Adequacy is determined by the Johnson factors.
 As noted above, Justice Rehnquist made reference only to the Johnson factors in Sosna :
 "In the present suit, where it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met."
 419 U.S. at 403, 95 S.Ct. at 559, 42 L.Ed.2d at 543. We do not interpret Sosna to have eliminated our nexus requirement. Membership in the class has always been required. 7 C. Wright & A. Miller, Federal Practice & Procedure § 1761 (1972). Indeed, the Court referred to the existence of a two-fold inquiry in Rodriguez in discussing our "different case": "Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives." --- U.S. at ----, n.12, 97 S.Ct. at 1898 (emphasis supplied).
 
 
 [1]
 For all we know, by now there may be no one sufficiently aggrieved to wish to do so or, indeed, aggrieved at all
 
 
 [2]
 In Napier v. Gertrude, 542 F.2d 825 (10th Cir. 1976), cert. denied, 429 U.S. 1049, 97 S.Ct. 759, 50 L.Ed.2d 765 (1977), a case rather similar to the one before us, the district court refused to consider certification of a class action because of its denial on the merits of individual relief. After the judgment, the passage of time rendered the individual complaint moot and precluded appellate consideration of it; grappling with whether or not to order a remand so that the trial court might reconsider class certification absent its previous undue emphasis on success of individual claims, the Tenth Circuit found such a remand improper and ordered dismissal. The Napier court noted that we had ordered a remand under somewhat similar circumstances in McGill v. Parsons, 532 F.2d 484 (5th Cir. 1976), but distinguished McGill correctly, I think on the basis of the certification of McGill as class representative before the dismissal of both individual and class claims. Decisions of other courts of appeal further emphasize the importance of the certification event in this context. See, e. g., Cleveland v. Ciccone, 517 F.2d 1082, 1084-85 n.13 (8th Cir. 1975); Bradley v. Housing Authority, 512 F.2d 626, 628 (8th Cir. 1975)