**Glen LEMOINE, Individually and on behalf of all others similarly situated**

v.

**C. Paul PHELPS, Individually and in his capacity as Secretary of the Department of Corrections for the State of Louisiana, et al.**

**Civ. A. No. 86–0957–A.**

United States District Court, W.D. Louisiana, Alexandria Division.

Sept. 19, 1986.

Henry C. Walker, Walker, Tooke, Perlman & Lyons, Shreveport, La., for plaintiff.

Dorwan G. Vizzier and Daniel E. Broussard, Jr., Broussard, Bolton, Halcomb & Vizzier, Alexandria, La., Joseph P. Beck II and Alan J. Golden, Colfax, La., for defendants.

RULING

LITTLE, District Judge.

Superficially this case appears to be a garden variety run of the mill class action suit. Glen Lemoine was arrested by Grant Parish authorities and detained in the parish jail in Colfax, Louisiana. The jail was not to his liking. So much so that he created a class action crusade not only for himself but also for all other pre-trial and post-trial detainees. This Court held a hearing on the certification issue, Fed.R. Civ.P. 23, on 20 August 1986 and at that hearing uncovered a bizarre if not unique set of circumstances which excludes the plaintiff as a member of the class he seeks to represent. The following are the facts as found by this Court and the law applicable to those facts.

In the early morning hours of the last day of April a residence in Grant Parish was burgled. Three shotguns were stolen by the intruder. Later the same day Wesley Lemoine admitted being the thief to his cousin, Glen Lemoine, and that he, Wesley, wanted to trade the guns for a boat, motor and trailer. Glen agreed to arrange the

exchange requested by Wesley. The cousins further agreed to a meeting much later on the same date at the place where Wesley had stashed the guns.

Plaintiff Glen Lemoine arranged not an exchange but an exposure. He called Adrian Lampkin, a Grant Parish sheriff's department detective, and acquainted the lawman with the details of Wesley's confession and the rendezvous yet to occur. Lampkin agreed to stake out the location. Glen Lemoine would meet Wesley Lemoine and when Wesley revealed the guns, Lampkin and fellow officers would make the arrest of Wesley *and* Glen. Glen's "arrest" was necessary for Glen's protection. If only Wesley were arrested, Glen's cover would be blown thereby exposing Glen to retaliatory action from Wesley.

As planned Glen met Wesley, the guns were disclosed, the sheriff's deputies pounced on the Lemoines, but Wesley absconded, only to be caught the following day. Carrying the charade to its conclusion, the plaintiff was handcuffed, arrested and incarcerated. His residency in the Grant Parish jail began at 11:40 P.M. on 30 April and terminated sixteen hours later on 1 May. Approximately thirty minutes before his release, plaintiff caused to be filed a fifteen-page petition listing a litany of complaints suffered by the plaintiff and other pre-trial and post-trial detainees. As an aside one must marvel at the modern wonders of observation, communication and word processing. For plaintiff to have experienced all of the defects described in his petition, communicated those observations to his Shreveport attorney, who in turn created the petition and filed it all within 16 hours, is a miracle to say the least. The miraculous action is even of greater dimension when one notes that the plaintiff's forma pauperis affidavit is notarized by plaintiff's attorney in Caddo Parish on 4 April 1986 (26 days *before* plaintiff was "arrested") and that the motion for certification of class was signed by plaintiff's attorney on 30 April 1986 as was his ten-page brief in support of the motion.

The only issues subject to court scrutiny at this point are plaintiff's motion that his suit be certified as a class action and that the class be defined as present and future pre-trial and post-trial detainees in the Grant Parish jail. This Court will not perpetuate nor participate in a fraud upon the law by granting the motion. The evidence adduced at the hearing conclusively establishes that plaintiff's arrest and incarceration were protective techniques designed to conceal his identity as a informer. Plaintiff was not arrested for breaking the law and no charges were brought against him. Moreover, he was not arrested or detained against his will. It is hornbook law that one may not represent a class of which he is neither a part nor a member. *Machella v. Cardenas*, 653 F.2d 923 (5th Cir.1981) and *Satterwhite v. City of Greenville, Texas*, 557 F.2d 414 (5th Cir.1977). Lemoine seeks to be tattooed with the appellation of "pre-trial detainee" but that category has been defined as " ... those persons who have been charged with a crime but who have not yet been tried on the charge." *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 at 458 (1979). The *liberty* of the plaintiff has not been restrained. *See dicta United States v. Wright*, 797 F.2d 245, 250–51 (5th Cir.1986). The plaintiff was a voluntary and willing precarious possessor of jail space and is not a member of a class composed of pre-trial and post-trial detainees in the Grant Parish jail. The crux of this ruling is that an informer arrested and incarcerated as a willing partner in a pretend production is not a member of the class of pretrial detainees. Accordingly, plaintiff's motion for certification is DENIED.